# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRIAD CAPITAL MANAGEMENT, LLC and AH PUBLISHING HOLDINGS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 C 3641 |
| v. | ) ) | Judge Joan B. Gottschall |
| PRIVATE EQUITY CAPITAL CORPORATION, | ) ) ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Private Equity Capital Corporation ("PECC") has moved to dismiss plaintiffs Triad Capital Management, LLC and AH Publishing Holdings, LLC's (collectively "Triad") complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer the case to the District of Connecticut. For the reasons set forth below, PECC's motion to dismiss or transfer is denied.

### I. BACKGROUND

Defendant PECC is a private equity firm that is incorporated in the state of Delaware and has its principal place of business in Westport, Connecticut; PECC also transacts business in Florida. PECC targets and acquires privately-owned businesses via the financial commitments of various investors. Triad is an Illinois limited liability company, located in Lake Forest, Illinois. Triad is likewise a private equity firm that acquires private entities through the commitments of investors and other equity firms.

1

In September, 2006, Triad was offered exclusive rights to purchase Author House Solutions, Inc. ("Author House"), an Indiana company. Triad consequently engaged the services of accountants at the Chicago office of Ernst & Young to perform a financial analysis of the proposed acquisition, and attorneys at the Chicago office of Katten, Muchin, Rosenman, LLP ("Katten") to perform a legal analysis of the deal. Triad was required to close on the Author House acquisition prior to December 31, 2006; failure to do so would result in the loss of Triad's exclusive rights.

In December, 2006, Triad's Managing Director, James Crawford ("Crawford") learned about PECC from an acquaintance, Charles Brennan ("Brennan"), with whom he was discussing the deal to acquire Author House. Shortly thereafter, Triad and PECC began negotiations concerning PECC's investment in the transaction to purchase Author House, which was allegedly necessary for Triad to have sufficient capital to consummate the deal. Negotiations between Crawford and John Ramey ("Ramey"), PECC's principal and sole decision-maker, continued via telephone, fax and emails. PECC was also in direct contact with Triad's accountants at Ernst & Young and its attorneys at Katten during this interval with respect to the proposed transaction. Crawford and Ramey met in person but once, at a meeting held on December 20, 2006 in Milwaukee Wisconsin, and neither Ramey, nor any other agent of PECC, ever traveled to Illinois in connection with the deal.

On December 23, Ramey wrote a letter (the "Letter Agreement") to Bryan Smith, the CEO of Author House, describing the agreement reached between PECC and Triad to jointly purchase Author House, subject to the terms of an already agreed upon Purchase Agreement (the "Purchase Agreement") drafted by Katten. The Purchase Agreement

specified, *inter alia*, that the closing of the transaction would take place at Katten's Chicago office. According to the Purchase Agreement, a representative of PECC was to be present at the closing, to be held prior to December 31, 2006, to execute the closing documents and deliver the specified capital. However, the December 31 date passed without the closing having taken place, and the deal was never consummated. Triad subsequently sued PECC, alleging breach of contract and promissory estoppel. Presently before the court is PECC's motion to dismiss Triad's complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Alternatively, PECC seeks to have the suit transferred to the District of Connecticut.

## II. ANALYSIS

On a motion to dismiss for lack of personal jurisdiction, it is the plaintiff who bears the burden of demonstrating the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). When deciding such a motion, "a court must accept all undenied factual allegations and resolve all factual disputes in favor of plaintiff." *Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 871 (N.D. Ill. 1994) (citation omitted).

In cases based upon diversity of citizenship, federal district courts sitting in Illinois have personal jurisdiction over nonresident defendants only to the extent that Illinois courts would have jurisdiction. *Edelson v. Chi'en*, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005); *Interlease Aviation Investors LLC v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003); *see also DeLuxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1212 (7th Cir. 1984). In Illinois, courts have personal jurisdiction over

nonresident defendants if permitted by: (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States. *Id*.

The Illinois long-arm statute currently extends personal jurisdiction to the limit permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c); *see also Vanguard Airlines*, 262 F. Supp. 2d at 905 (citing *LaSalle Bank Nat'l Ass'n v. Epstein*, No. 99 C 7820, 2000 WL 283072, at *1 (N.D. Ill. Mar. 9, 2000). Moreover, the Seventh Circuit has stated that generally "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" and that not since the Illinois Supreme Court's 1990 *Rollins* decision has an Illinois court encountered a case in which federal due process requirements permitted personal jurisdiction and Illinois due process requirements prohibited it. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002). Thus, the three requirements for personal jurisdiction collapse into a single analysis. Consequently, courts of the Seventh Circuit have conducted only a federal due process analysis in determining whether personal jurisdiction may be exerted over nonresident parties. *Vanguard Airlines*, 262 F. Supp. 2d at 906 (citing *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2002 WL 31870531, at *4 (N.D. Ill. Dec. 23, 2002)); *United Fin. Mortgage Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 891-92 (N.D. Ill. 2002)).

Federal due process requirements prescribe that nonresident defendants have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt*, 302 F.3d at 713 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The standard of "minimum contacts" depends upon whether general or specific personal jurisdiction is

4

alleged. *Vanguard Airlines*, 262 F. Supp. 2d at 906 (citing *RAR,* 107 F.3d at 1277). Both Triad and PECC agree that the court does not have general personal jurisdiction over PECC. The court therefore turns to the question of whether it may exert specific personal jurisdiction over PECC.

Under the Illinois long-arm statute, a court may exert specific jurisdiction over a nonresident defendant if the defendant has (1) purposefully established minimum contacts with the state; (2) if the cause of action arises out of, or is related to, the defendant's contacts with the forum; and (3) if the exertion of jurisdiction is constitutionally reasonable. 735 ILCS § 5/2-209; *RAR*, 107 F.3d at 1277; *Logan Products v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996); *United Phosphorus Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999). The United States Supreme Court has delineated two means by which the requisite "minimum contacts" may be established for purposes of specific jurisdiction: (1) purposeful availment by the defendant of the benefits and protections of the laws of the forum state such that the defendant could reasonably anticipate being haled into court [in Illinois]; or (2) harm to an individual within the state where the harm is both intentional and aimed at the forum state. *RAR*, 107 F.3d at 1277; *Hy Cite Corp. v. BadBusinessBureau.Com*, 297 F. Supp. 2d 1154, 1163 (W.D. Wis. 2004) (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987); *Calder v. Jones*, 465 U.S. 783, 788-90 (1984)). It is the former of the two means which is at issue in this case.

It is undisputed that the lawsuit at bar "ar[o]se out of" or is "related to" PECC's alleged minimum contacts with Illinois. Triad's breach of contract and promissory estoppel claims against PECC arose out of the alleged negotiated agreement between

5

PECC and Triad by which PECC was to provide the necessary capital required by Triad to consummate the acquisition of Author House. The initial question before the court, then, is whether the negotiations between PECC and Triad leading up to the aborted transaction are sufficient to establish that PECC established minimum contacts with Illinois sufficient to establish specific jurisdiction.

A foreign party's contract with an Illinois citizen is, in itself, insufficient to establish minimum contacts. *RAR*, 107 F.3d at 1277; *MAC Funding Corp. v. Northeast Impressions, Inc.*, 215 F. Supp. 2d 978, 981 (N.D. Ill. 2002). Rather, the court must look to a number of factors when deciding whether to exercise specific personal jurisdiction over a nonresident defendant including: (1) who initiated the transaction; (2) where the negotiations were conducted; (3) where the parties executed the contract; and (4) where the defendant would have performed the contract. *MAC Funding*, 215 F. Supp. 2d at 981.

PECC argues that it was Triad's Crawford who initiated the transaction by contacting Ramey in December 2006. Furthermore, PECC insists that none of the negotiations leading up to the agreement took place inside Illinois. Indeed, with the exception of the single face-to-face meeting between Crawford and Ramey in Milwaukee, all of the negotiations between PECC, on the one hand, and Triad, Katten, and Ernst & Young, on the other, took place via telephone, fax and email. PECC insists that neither Ramey nor any other agent or representative ever set foot in Illinois.

Triad disputes PECC's claim that Triad was the party which initiated the contact, claiming rather that PECC was the party to initiate contact. The court is required to resolve all factual disputes in favor of Triad, the plaintiff. *Chemical Waste*, 870 F. Supp. at 871. However, Triad adduces no credible facts that demonstrate that it was PECC, and

not Triad, who initiated contact. In its complaint, Triad states merely that "PECC was offered by Triad the opportunity to invest … in the purchase of Author Solutions." Compl. ¶ 1. Moreover, Triad "shared with PECC the opportunity to invest in the purchase of Author Solutions, Inc" and "[a]fter discussions between Triad and PECC, PECC promised Triad that it would provide financial support for the purchase of Author Solutions …." *Id.* ¶¶ 8-9. Therefore the complaint leaves unanswered the question of which party actually initiated contact. Crawford has also submitted an affidavit, in which he avers that he first learned of PECC as a potential investor from Brennan in a conversation on December 8, 2006. Crawford Aff. ¶ 4. Crawford further avers that, prior to his conversation with Brennan, he had never heard of either PECC or Ramey, nor did he receive any contact information concerning Ramey or PECC at that time. *Id.* Crawford goes on to state that he and Ramey had "a substantive discussion about the Author House deal" on December 13, 2006. *Id.* Once again, the question of which party actually initiated the contact is left ambiguous.

However, PECC has produced a copy of a December 11, 2006 email from Crawford to Brennan (three days after their conversation and two days before the substantive phone conversation between Crawford and Ramey) in which Crawford thanks Brennan for "the contact info on John Ramey" and inquires if Ramey is "reachable overseas through his Blackberry phone." PECC's Reply Memo. Ex. A. In other words, although Crawford, as he avers, may not have received Ramey's contact information from Brennan during the December 8 conversation, he must have asked for it shortly thereafter, for he thanks Brennan for the information three days later, just prior to his discussion with Ramey. PECC also provides a copy of Crawford's Microsoft Outlook

Calendar for December 13, 2006 with the following entry for 10:00-11:00 a.m.: "Call John Ramey re AuthorHouse [sic] at suggestion of Chip Brennan … ; if [illegible] call Donna, his assistant …." PECC's Reply Memo. Ex. B. Furthermore, Crawford's long distance phone bills indicate that four outgoing calls were made from Crawford's phone to PECC at 10:03 a.m., 10:04 a.m., 10:06 a.m., and 11:14 a.m. on December 13, 2006. PECC's Reply Memo. Ex. C.

However, even were the court to construe this dispute in favor of the plaintiff, the identity of the party who initiated contact is not dispositive to a determination of specific personal jurisdiction, but is only one of several factors to be considered. *MAC Funding*, 215 F. Supp. 2d at 981; *see also Logan*, 103 F.3d at 52 ("[T]he constitutionality of jurisdiction does not turn on which party 'started it.'"). With respect to the other factors, and viewing them in the light most favorable to Triad, the negotiations between Triad and PECC were conducted via telephone, fax, and email, and during a single face-to-face meeting between Crawford and Ramey in Milwaukee. The Purchase Agreement was to have been executed by Triad and PECC at Katten's Chicago offices, at which time performance (delivery of the capital required to close the Author House deal) would have taken place. The question before the court, then, is whether, viewed collectively, these factors suffice to establish "minimum contacts" between PECC and Illinois.

The United States Supreme Court has held that minimum contacts analysis must rely upon the "foreseeability" factor, i.e., whether PECC could have reasonably anticipated being haled into an Illinois court with respect to the litigation at issue. *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). Furthermore, it must be the

activities of the defendant, and not the unilateral activities of the plaintiff, that make the defendant subject to the court's jurisdiction. *Burger King*, 471 U.S. at 474; *Purdue*, 358 F.3d at 780. Such activities must demonstrate a real relationship with the state with respect to the transaction at issue, and not merely be based on fortuitous or attenuated contacts with the forum state. *Burger King*, 471 U.S. at 475. To this end, the Supreme Court has consistently required courts to inquire as to whether the defendant has engaged in significant activities within the forum state or, more pertinently, whether it has created continuing obligations between itself and a resident of the forum. *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950).

In the instant case, Triad and PECC conducted negotiations over the course of several weeks with respect to the Author House deal. These included communications between PECC and Triad and, additionally, between PECC and Katten and Ernst & Young. All of these communications were in contemplation of a contract that was to be executed and performed in Illinois under the terms of the Purchase Agreement. Although no representative of PECC ever set foot in Illinois, that absence alone is not enough to deny specific jurisdiction. *See, e.g., Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prods., Inc.*, 619 F.2d 676, 678 nn.6, 8 (7th Cir. 1980).

Isolated telephone calls and emails by themselves may not be sufficient to provide a basis for asserting personal jurisdiction. *Abbott Labs., Inc. v. BioValve Technologies, Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) (citing *Delcon, Inc. v. Robert McMullan & Son, Inc.*, No. 85 C 4220, 1985 WL 5048, at *3 (N.D. Ill. Dec. 20, 1985)) ("Interstate telephone and mail communications to an Illinois plaintiff are not sufficient to support jurisdiction over a nonresident defendant."). But the Supreme Court and the Seventh

Circuit have limited the principle established in *Delcon*, enabling the court to consider telephone and e-mail communications when viewing a defendant's contact with the forum state "collectively." *Abbott*, 543 F. Supp. 2d at 921 (quoting *Mid-Am. Tablewares v. Mogi Trading Co.*, 100 F.3d 1353, 1361 (7th Cir.1996)). Sustained and intensive contact over the course of several weeks between the parties, and their lawyers and accountants, with the specific aim of arriving at the terms of a contract under the pressure of a short-term deadline, is not "random, fortuitous, or attenuated." *Abbott*, 543 F. Supp. 2d at 921. On the contrary, even when contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state: "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* (quoting *Burger King*, 471 U.S. at 476).

The court finds that even if PECC did not initiate the contact (and it remains skeptical of Triad's version of events) and even if neither Ramey nor any other agent of PECC ever set foot in Illinois, the intensive negotiations via telephone, email and fax between PECC and Triad, including contact with Triad's attorneys and accountants, over a contract that was to be executed and performed in Chicago, were not random, fortuitous, or attenuated. Rather, they evince a real relationship with the state with respect to the transaction at issue. Therefore, the court finds that this element of the specific personal jurisdictional analysis, *viz.*, that PECC established minimum contacts with Illinois with respect to the transaction at issue, is satisfied.

Once it has been established that the defendant purposefully established minimum contacts with the forum state arising out of the transaction at issue, those contacts must be evaluated in light of other factors to determine whether the exercise of jurisdiction would be compatible with traditional notions of "fair play and substantial justice." *Purdue*, 358 F.3d at 781 (quoting *Int'l Shoe*, 326 U.S. at 326). Factors the court may look to in this analysis include: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute]; (5) and the shared interest of the several States in furthering fundamental substantive social policies. *Purdue*, 358 F.3d at 781.[1] When a defendant's minimum contacts with the forum are relatively weak (although extant), these considerations may argue in favor of the exercise of jurisdiction. *Id.* Moreover, the Supreme Court has directed the federal courts to adopt a "highly realistic" approach and to place the contract in the context of the entire transaction of which it is a part. *Burger King*, 471 U.S. at 479. Thus, the court must look to prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other. *Id.*

In the instant case, the court finds that these factors collectively weigh in favor of the court exercising jurisdiction. Admittedly, the burden on PECC of litigating a case in Illinois is greater than litigating this case in its home state of Connecticut would be. However, Illinois can be rightly said to have an interest in protecting the claims of its

---

[1] These factors rarely will justify a determination against personal jurisdiction. Usually, these considerations may be accommodated through consideration of means other than jurisdiction. For example, the application of choice of law rules can usually provide an adequate means of reconciling social policies of another state and a change of venue can often mitigate adequately significant inconvenience to the defendant. *Purdue*, 358 F.3d at 781 n.10.

11

citizens in contracts that are negotiated with citizens of foreign states and are to be executed and performed in Illinois. Furthermore, Triad has the traditional right of a plaintiff to select the forum (providing jurisdiction exists) in which to litigate its case and, in this case, Triad's interest and convenience in litigating in Illinois at least balance PECC's convenience in litigating in Connecticut. This suit was initiated in the Northern District of Illinois which is more than capable of adjudicating the dispute, and the court sees no inherent advantage or efficiency in transfer of this case to our sister district in Connecticut. And given the exponential increase in the manner in which business is conducted electronically in the modern world, the judicial system's interest in exerting jurisdiction over contracts that were intensively negotiated, even if only via electronic means, in the forum state are substantial.

Although there were no prior negotiations between Triad and PECC prior to the contract in issue, both PECC and Triad anticipated an ownership interest in Author House had the deal in fact been consummated. Furthermore, both PECC and Triad expressed an avid interest in completing the acquisition of Author House together had the deadline been extended past December 31, 2006. In summary, both parties actively engaged in the negotiation of a contract that was to be executed and performed in Illinois (at least with respect to the transfer of capital from PECC to Triad). The court therefore finds that because PECC purposefully established minimum contacts with Illinois, exerting jurisdiction over PECC in the instant case would not offend traditional notions of "fair play and substantial justice." PECC's motion to dismiss or, alternatively, to transfer this case to the District of Connecticut is consequently denied.

## III. CONCLUSION

For the reasons set forth above, PECC's motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer this case to the District of Connecticut is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 25, 2008