# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRIAD CAPITAL MANAGEMENT, LLC and AU PUBLISHING HOLDINGS, LLC | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07 C 3641 |
| v. | ) ) | Judge Joan B. Gottschall |
| PRIVATE EQUITY CAPITAL CORPORATION and JOHN M. RAMEY | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Private Equity Capital Corporation and John M. Ramey (collectively "PECC") have moved to exclude the expert witness testimony and report of Jason G. Tolmaire while plaintiffs Triad Capital Management, LLC and AU Publishing Holdings, LLC (collectively, "Triad") have moved *in limine* to bar PECC's proffered experts Robert R. McSorley and Scott P. George. For the reasons set forth below, PECC's motion is granted in part and denied in part, Triad's motion *in limine* to exclude McSorley is granted, and Triad's motion *in limine* to exclude George is granted in part and denied in part.

### I. BACKGROUND

Triad, a private equity firm, alleges that PECC, also a private equity firm, agreed to join Triad in purchasing a publishing company named Author Solutions, Inc., d/b/a Author House, through AU Publishing Holdings, LLC, a shell company formed for the purposes of the purchase. Closing was to take place before December 31, 2006.

1

However, the deal did not close by that date and Author Solutions, Inc. opted to proceed with another purchaser. Triad sues PECC alleging breach of contract, promissory estoppel, and fraud. For a more complete recitation of the underlying facts and history of the case, see the court's prior opinions. *See Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2010 WL 3023409 (N.D. Ill. July 29, 2010); *see also Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357 (N.D. Ill. Aug. 25, 2008).

Triad's attorneys hired Tolmaire "to calculate the fees and recovery of costs that would have been received by Plaintiffs if the purchase of Author Solutions, Inc. had been completed by the closing date." (PECC's Mot. to Exclude Tolmaire at 2.) Tolmaire arrived at his conclusion that Triad would have recovered $363,366 in costs had the deal closed by Dec. 31, 2006 by adding together the amounts Triad paid for legal, accounting, and other services related to the purchase of Author Solutions, Inc. (*See* PECC's Mot. to Exclude Tolmaire Ex. A at 4 & Ex. 4.) Tolmaire arrived at his conclusion that Triad would have received a $135,000 transaction fee had the deal closed by Dec. 31, 2006 by reading Section 1.6 of the Stock Purchase Agreement, which provides, "[a]t the Closing, the Company shall pay to Buyer a transaction fee equal to $135,000 (the "Triad Fee")." (*See* PECC's Mot. to Exclude Tolmaire Ex. A at 4.) Tolmaire arrived at his conclusion that Triad would have received $1,123,238 in annual management fees had the deal timely closed by adding the annual management fee the parties had discussed Triad receiving for 2007, 2008, and 2009 to "the present value of future payments that would have been received in 2010 and 2011."[1] (PECC's Mot. to Exclude Tolmaire Ex. A at 6.)

---

[1] According to Tolmaire's expert report, Triad anticipated owning Author Solutions, Inc. for only five years. (PECC's Mot. to Exclude Tolmaire Ex. A at 5-6.)

2

PECC's attorneys hired McSorley "to review, analyze, and evaluate" Tolmaire's expert report. (Triad's Mot to Exclude McSorley Ex. A at 1.) McSorley arrived at his conclusion that Triad would have actually recovered $51,365 in costs had the deal timely closed, not $363,366 as Tolmaire opined, by 1) reading an itemization of Triad's expenses showing that Triad had actually paid $60,000 for accounting services, not the $226,000 indicated on the invoice on which Tolmaire relied, 2) substituting the $60,000 figure for the $226,000 figure, 3) adding that to the rest of the line-item expenses Tolmaire had added up, then 4) subtracting $150,000 to reflect a settlement payment Triad received from the ultimate purchaser of Author Solutions, Inc. (Triad's Mot. to Exclude McSorley Ex. A at 4.) McSorley arrived at his conclusion that Tolmaire erroneously concluded that Triad would have received a $135,000 transaction fee had the deal timely closed by reviewing evidence that showed that 1) PECC was not a party to the stock purchase agreement on which Tolmaire relied in arriving at that figure, and 2) Ramey, PECC's principal, did not agree to that amount or that Triad would retain 100% of the transaction fee. (Triad's Mot. to Exclude McSorley Ex. A at 4.) McSorley also posits that Tolmaire's opinion about the transaction fee is unreliable because he did not consider Ramey's deposition testimony – which contradicts the stock purchase agreement – or analyze whether awarding 100% of the transaction fee to Triad was reasonable. (Triad's Mot. to Exclude McSorley Ex. A at 5.) McSorley arrived at his conclusion that Tolmaire erroneously concluded that Triad would have received $1,123,238 in annual management fees had the deal timely closed by reasoning that Tolmaire did not analyze 1) whether "the business" was capable of paying Triad such a yearly fee, 2) whether

Centerfield Capital would have agreed to this fee and on what terms, 3) whether Triad's or PECC's investors would have agreed to this fee, and 4) how economic conditions could have adversely affected the business. (Triad's Mot. to Exclude McSorley Ex. A at 5.)

PECC's attorneys hired George to "render an opinion . . . "regarding (1) reasonableness of a year-end close given the timing of PECC's introduction to the AuthorHouse Deal, and (2) the content of the PECC Letter, and specifically what the terms 'commitment' and 'binding letter of intent' would mean to sophisticated investors and participants in contemplated transactions such as the AuthorHouse Deal." (Triad's Mot. to Exclude George Ex. A at 1.) George provided the following opinions:

1. Mr. Crawford could not reasonably have expected Mr. Ramey (who Mr. Crawford knew relies upon his ability to raise private equity on a deal by deal basis) to transfer to Triad the full amount of equity required by Triad within 16 days of having first heard about the AuthorHouse Deal from Mr. Crawford nor would it be reasonable to have thought that Mr. Ramey would firmly commit to provide such capital without the opportunity to meet the management of the company being acquired.

2. Letters of Intent typically are viewed by financial professionals as non-binding and, by definition, generally are conditioned upon the satisfaction or occurrence of certain matters.

3. The language contained in the December 23rd Letter is ambiguous and lacks specificity regarding several key terms that generally are required to be directly addressed in order for a party to be able to reasonably rely upon the representations contained in such letters.

4. The language contained in the December 31st Letter did constitute a commitment on the part of PECC to provide $3 million in equity to consummate the closing of the AuthorHouse Deal on or before January 31, 2007.

5. Triad's failure to close by December 31, 2006 was not due to inaction on the part of PECC (as asserted by Triad); and

6. Investment banking and private equity investors typically each pay their own closing costs, absent a mutually executed written agreement that indicates otherwise.

(Triad's Mot. to Exclude George Ex. A at 8-9.) George arrived at these opinions by reviewing certain pleadings, discovery responses, deposition transcripts, and McSorley's expert report, and – in the case of points 1 and 6 above – drawing upon his more than 30 years of experience as an investment banker. (Triad's Mot. to Exclude George Ex. A at 9-15.)

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admission of expert testimony. Rule 702 provides:

> If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Thus, expert testimony is not admissible unless it is relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Expert witnesses must have the "knowledge, skill, experience, training, or education" to qualify as an expert; the methodology underlying the expert's testimony must be reliable; and the expert's testimony must help the trier of fact understand the evidence or determine a fact at issue. *Ervin,* 492 F.3d at 904; Fed. R. Evid. 702; *Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000) ("[I]n order for an expert's testimony to qualify as 'relevant' under Rule 702 it must assist the jury in determining *any* fact at

issue in the case."). In determining whether the expert's methodology is reliable, the court may consider "(1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010) (*citing Daubert*, 509 U.S. at 593-94.).

Also relevant to the parties' motions is Federal Rule of Evidence 403 and portions of Federal Rule of Civil Procedure 26. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Rule 26(a)(2)(B) requires parties who have disclosed an expert witness to disclose a report outlining, *inter alia*, what opinions that expert witness will provide. Rule 26(a)(2)(C)(ii) refers to "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a)(2)(C)(ii).

### III. ANALYSIS

**A. PECC's Motion to Exclude the Expert Witness Testimony and Report of Tolmaire**

PECC argues that this court should exclude Tolmaire because his testimony is unhelpful to the jury because he does nothing more than simple math to arrive at his conclusions. (PECC's Mot. to Exclude Tolmaire at 2-3 & 7-9.) PECC also argues that Tolmaire's opinions are unreliable, and therefore barred by Rule 702, because Tolmaire did not rely on "sufficient facts or data" in arriving at his conclusions. (PECC's Mot. to

Exclude Tolmaire at 9.) Lastly, PECC argues that Tolmaire's report and testimony could unduly prejudice PECC, contrary to Rule 403, by causing the jury to infer that Tolmaire analyzed whether Triad's expenses were actually undertaken, were reasonable, and are owed to Triad by PECC when, in fact, Tolmaire did not engage in any such analysis. (PECC's Mot. to Exclude Tolmaire at 3-4 & 10-11.)

This court agrees that Rules 403 and 702 bar Tolmaire's report and testimony insofar as he offers opinions as to the costs Triad would have recovered and the transaction fee Triad would have received had the deal closed by Dec. 31, 2006. To calculate the costs Triad would have recovered, Tolmaire does nothing more than add up eight line-items of expenses Triad incurred in negotiating and preparing to consummate the deal.[2] (*See* PECC's Mot. to Exclude Tolmaire Ex. A at 4 & Ex. 4.) To ascertain the transaction fee Triad would have received, Tolmaire merely read a sentence of the Stock Purchase Agreement that listed the amount. (*See* PECC's Mot. to Exclude Tolmaire Ex. A at 4-5.) A jury can do simple math and read. *See Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC, et al.*, No. 3:09cv 1546 (MRK), 2010 WL 2978289, at *3 & *5 (D. Conn. Apr. 9, 2010) ("There is absolutely no reason why the jury cannot do [addition] for itself; in fact, juries do these types of calculations all the time."). Thus, Tolmaire's opinion on these points does not "assist the trier of fact to understand the evidence or determine a fact in issue" as required by Rule 702. Fed. R. Evid. 702. In addition, the offering of Tolmaire's opinion may unduly prejudice PECC by giving the jury the impression that Tolmaire did something more than the simple addition and reading that the jury could have done itself. Given this, PECC's motion to exclude

---

[2] Expert opinion on what constitutes reasonable expenses might be admissible, but it is unclear that this is a subject of Tolmaire's proposed testimony.

Tolmaire is granted as to Tolmaire's opinions about the costs Triad would have recovered and the transaction fee Triad would have received had the deal timely closed.

While the court agrees that Rules 702 and 403 similarly bar Tolmaire's opinion about the total annual management fees Triad would have received had the deal closed by Dec. 31, 2006,[3] the court does not agree that Rules 702 and 403 bar Tolmaire's opinion about the present value of annual management fees Triad would have received in 2010 and 2011 had the deal timely closed. In arriving at his conclusion that Triad would have received $1,123,238 in annual management fees over its five years of anticipated ownership of Author Solutions, Inc., Tolmaire completed a calculation involving the time value of money. The jury may have difficulty discounting the amount of the annual management fees Triad alleges it would have received in 2010 and 2011 to arrive at the present value of those fees. Given this, Tolmaire's explanation of this calculation could assist the jury in compliance with Rule 702.

PECC also argues that Tolmaire's opinion is not based on sufficient facts. (PECC's Mot. to Exclude Tolmaire at 9-10.) Specifically, PECC disputes Tolmaire's testimony and report because it is based on documents PECC argues are not relevant as well as upon the assumptions that the annual management fees were, in fact, reasonable and that PECC is, in fact, liable to Triad for them. (PECC's Mot. to Exclude Tolmaire at 2 n.1 & Ex. A; PECC's Reply in Supp. of its Mot. to Exclude Tolmaire at 6.) Tolmaire gleaned the annual management fee the parties discussed and the number of years Triad planned to own Author Solutions, Inc. from email correspondence between the parties, Crawford's handwritten notes, Crawford's deposition, and a memorandum issued by

---

[3] Summing up the value of the fee received in each of five years involves nothing more than simple addition.

Triad. (PECC's Mot. to Exclude Tolmaire Ex. A.) PECC points out that the handwritten notes and another document came into being after Dec. 27, 2006 – the date on which PECC allegedly reneged – and are thus irrelevant. (PECC's Mot. to Exclude Tolmaire at 9-10.) Triad argues that these documents are relevant because they show the state of the parties' relationship at that time. (Triad's Opp'n to Defs. Omnibus Mot. to Exclude Certain Evidence During Trial at 2.) Triad also argues that it is for a jury to decide whether these documents themselves constitute an enforceable contract between the parties. (*Id*. at 3.) The court agrees that it is for the jury to decide whether Triad has established the relevance of the documents and the merit of the factual predicates on which Tolmaire bases his opinions. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . .") If the jury concludes that Triad has not established as much, the jury can reject Tolmaire's opinions. Accordingly, PECC's objection that Tolmaire's opinion is unreliable because it is not based on sufficient facts is overruled without prejudice to renewal should Triad fail to offer evidence to support Tolmaire's premises.[4]

Assuming that Triad offers sufficient evidence to support the premises upon which Tolmaire relies, the probative value of Tolmaire's testimony about the present value of Triad's 2010 and 2011 annual management fees outweighs the risk of prejudice to PECC. *See Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585,

---

[4] The parties have not addressed whether a projection of five years of fees is reasonable, given the contingencies that could occur in such a lengthy period. The parties should refer to Seventh Circuit law on this point. *See*, *e.g.*, *Smart Marketing Group Inc. v. Publications Intern Ltd.*, --- F.3d ----, Nos. 09-2646 & 09-2812, 2010 WL 4237443 (7th Cir. Oct. 28, 2010).

591 (7th Cir. 2000) (affirming the district court's admission of expert testimony by a certified public accountant as to the discounted present value of lost future earnings). PECC can establish via cross-examination that Tolmaire did nothing more than accounting calculations.

Furthermore, the court finds that Triad has met its burden of showing by a preponderance of the evidence that Tolmaire has the "knowledge, skill, experience, training, or education" to qualify as an expert, but Triad has not provided the court with enough information to determine whether his methodology is reliable. *Daubert*, 509 U.S. at 592 n. 10 (*citing Bourjaily v. United States*, 483 U.S. 171, 175-76, 107 S. Ct. 2775, 2778-2779, 97 L. Ed. 2d 144 (1987) (noting, "the offering party must prove [such matters] by a preponderance of the evidence", and noting that the admissibility of an expert "should be established by a preponderance of proof."). Tolmaire is a certified public accountant. (PECC's Mot. to Exclude Tolmaire Ex. A at Ex 1.) Given this, the court finds that Triad has shown that Tolmaire has the "knowledge, skill, experience, training, or education" to qualify as an expert regarding the present value of the annual management fees Triad alleges it would have received in 2010 and 2011. As noted above, although the methodology Tolmaire used to calculate the present value of the 2010 and 2011 fees appears to be reliable, the court is unable to determine without further assistance that this is indeed the case. However, PECC does not raise any argument that Tolmaire's methodology in calculating the present value of the future payments is unreliable, so the court will not exclude Tolmaire's testimony about the present value of the future payments at this time on this basis. PECC's motion to exclude Tolmaire is

denied as to Tolmaire's opinion of the present value of the annual management fee Triad alleges it would have received in 2010 and 2011 had the deal timely closed.

B.     **Triad's Motion *In Limine* To Bar PECC's Proffered Expert McSorley**

PECC has proffered McSorley, under Federal Rule of Civil Procedure 26(a)(2)(C)(ii), as a rebuttal expert witness for the sole purpose of rebutting Tolmaire's opinions. (PECC's Opp'n to Pls.' Mot. to Exclude McSorley at 2.) As PECC points out, rebuttal experts "cannot exceed the scope of the opinions to which the report responds." (PECC's Opp'n to Pls.' Mot. to Exclude McSorley at 2. (*citing Aircraft Gear Corp. v. Marsh*, No. 02 C 50338, 2004 WL 1899982, at *6 (N.D. Ill. Aug. 12, 2004).) Given that the court has excluded Tolmaire's testimony except to the extent that Tolmaire opines about the present value of the annual management fee Triad alleges it would have received in 2010 and 2011 had the deal timely closed, any opinion of McSorley that does not address this opinion of Tolmaire is excluded as irrelevant.[5] McSorley does not opine on the propriety of Tolmaire's calculation of the present value of the annual management fees. (*See generally* Triad's Mot. to Exclude McSorley Ex. A.) Thus, Triad's motion *in limine* to exclude McSorley is granted.[6]

---

[5]     To the extent Tolmaire offers testimony as to which costs constitute "Buyer's expenses," McSorley may be able to provide testimony disputing his opinion.

[6]     The court also notes that McSorley's first two opinions would have also been excluded on the basis that McSorley's opinion does not "assist the trier of fact to understand the evidence or determine a fact in issue" as required by Rule 702 while McSorley's third opinion would have also been excluded on the basis that it is not a rebuttal opinion. In opining on whether Tolmaire's opinion about the costs is correct, McSorley does nothing more than reading, addition, and subtraction. A jury does not need help with these tasks. In opining on whether Tolmaire's opinion about transaction fees is correct, McSorley does nothing more than take notice of conflicting evidence and fault Tolmaire for not crediting the conflicting evidence. A jury is fully capable of taking notice of conflicting evidence and deciding whether that evidence is credible. Lastly, McSorley's opinion that the annual management fee is unreasonable is not a rebuttal opinion. Tolmaire does not opine on whether the annual management fee is unreasonable. Thus, this opinion of McSorley's exceeds the scope of his allowable testimony as a rebuttal expert. *See generally Aircraft Gear Corp.*, 2004 WL 1899982; *see also Gilbane Building Company v. Downer's Grove Community High School Dist. No. 99*, No. 02 C 2260, 2005 WL 838679, at *11 (N.D. Ill. Apr. 5, 2005).

## C. Triad's Motion *In Limine* To Bar PECC's Proffered Expert George

George draws upon his more than 30 years of experience as an investment banker in reaching his first and sixth opinions in which he opines that 1) Crawford could not have reasonably have expected Ramey to transfer the full amount required to close the deal within 16 days of learning about the deal, 2) Crawford could not have reasonably thought that Ramey would commit to provide this financing before meeting the management of the company being acquired, and 3) investors typically pay their own closing costs. (Triad's Mot. to Exclude George Ex. A at 9-10 & 15.) In contrast, George arrives at the remainder of his opinions by simply weighing the evidence and choosing to credit one version over another. The jury does not need help weighing the evidence. *See Noller v. London & Lancashire Indem. Co. of America*, 103 F.2d 622, 623 (7th Cir. 1939) ("The jurors are the sole and exclusive judges of the facts, of the credibility of the witnesses, and of the weight of the evidence.") As such, George's testimony is barred except for his first and sixth opinion as only these opinions "assist the trier of fact to understand the evidence or determine a fact in issue" as required by Rule 702.[7] Fed. R. Evid. 702; s*ee Bd. Of Tr., Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, No. 08-12586, 2010 WL 2787434, at *8 (E.D. Mich. Jul. 14, 2010) ("Details of private equity funds' investment and management practices are outside the domain of an ordinary person's knowledge . . . .").

Triad argues that George should be excluded because his opinions are unreliable as he used no methodology, considered some facts while disregarding others, and would be telling the jury what to think. (Triad's Mot. to Exclude George at 4.) Since the court

---

[7] George may not testify to the bases of his first opinion to the extent that that opinion was based on nothing more than his weighing of the evidence – bases D-H of his report. (Triad's Mot. to Exclude George Ex. A at 10-11.)

has just excluded those parts of George's opinions that weighed the evidence, Triad's second and third arguments are moot. With regard to Triad's argument about George's lack of methodology, while it is true that Rule 702 requires the expert to explain the methodologies and principles that support his opinion, "[a]n expert's testimony is not unreliable simply because it is founded on his experience rather than on data." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (noting at footnote 8, "[c]riminal cases, for instance, are replete with examples of experts, such as police officers and informants, qualified by experience.") Indeed, "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." (PECC's Opp'n to Pls.' Mot. to Exclude George at 4. (*quoting Walker v. Soo Line Railroad Co.*, 208 F.3d 581, 591 (7th Cir. 2000).) George attests that he is "an investment banker with over 30 years of experience with working on merger & acquisition transactions," many of which involved private equity firms that had to raise capital from other parties. (Triad's Mot. to Exclude George Ex. A at 16.) Accordingly, PECC has met its burden of showing by a preponderance of the evidence that George has the "knowledge, skill, experience, training, or education" to qualify as an expert. Regarding methodology, like the expert in *Metavante Corp.*, George explained that he arrived at his first and sixth opinions based on usual business practices in the industry "as he has seen and experienced it." 619 F.3d at 761-72. Given this, this court concludes – as the United States Court of Appeals for the Seventh Circuit concluded in *Metavante Corp.* – that George's testimony "cannot be characterized as mere *ipse dixit*" and is reliable. *Id.* Thus, the court also finds that PECC has met its burden of showing by a

preponderance of the evidence that the methodology underlying George's testimony is adequately reliable.

### III. CONCLUSION

For the reasons set forth below, PECC's motion is granted in part and denied in part, Triad's motion *in limine* to exclude McSorley is granted, and Triad's motion *in limine* to exclude George is granted in part and denied in part.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 22, 2010