UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRIAD CAPITAL MANAGEMENT, LLC<br>and AU PUBLISHING HOLDINGS, LLC | )<br>)<br>) | |
| Plaintiffs, | )<br>) | Case No. 07 C 3641 |
| v. | )<br>) | Judge Joan B. Gottschall |
| PRIVATE EQUITY CAPITAL<br>CORPORATION and JOHN M. RAMEY | )<br>)<br>)<br>) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Private Equity Capital Corporation and John M. Ramey (collectively, "PECC") bring an omnibus motion *in limine* to exclude certain evidence during trial. PECC requests that the court enter an order precluding plaintiffs Triad Capital Management, a private equity firm, and AU Publishing Holdings, LLC (collectively, "Triad") from publishing, discussing, alluding to, or otherwise presenting to the jury, four categories of evidence during trial: (a) any reference to "agreements" or "terms of agreements" made after December 27, 2006; (b) information and statements pertaining to Ramey's net worth or financial condition; (c) any reference, description, or characterization of Ramey as a lawyer, and (d) reference to the size and number of attorneys of Greenberg Traurig, LLP. For the reasons stated below, the court grants in part and denies in part PECC's motion.

1

# I. FACTUAL BACKGROUND

Triad, a private equity firm, alleges that PECC, also a private equity firm, agreed to join Triad in purchasing a publishing company named Author Solutions, Inc., d/b/a Author House, through AU Publishing Holdings, LLC, a shell company formed for the purposes of the purchase. John Ramey is the principal of PECC. Triad, through its managing director James Crawford, and PECC, through Ramey, first discussed a deal pertaining to Author Solutions, Inc. over the phone and through email on December 13, 2006. Crawford and Ramey met for the first time on December 20, 2006. On December 22, 2006, Crawford drafted and sent to Author Solutions, Inc. a letter from Ramey, which Ramey edited and signed. Ramey signed a new letter (hereinafter "PECC Letter") incorporating Author Solutions Inc.'s edits on December 23, 2006. According to the PECC Letter, closing was to take place on December 29, 2006 with an effective date of December 31, 2006. However, during a December 27th telephone call that included Crawford, Ramey informed Author Solutions, Inc. that the deal would not close on December 29th. Crawford and Ramey continued to discuss the deal after December 27, 2006 and on December 30th Crawford emailed Ramey and PECC's counsel a document entitled "Agreement on Significant Terms Between PECC and TRIAD" (hereinafter "Term Sheet"). The Term Sheet was never signed. The parties dispute whether Crawford, Ramey and PECC's counsel had a conference call, in which the parties discussed and revised the Term Sheet. When Triad and PECC did not produce the required financing by December 31, 2006, Author Solutions, Inc. opted to proceed with another investor. Triad sued PECC alleging breach of contract, and promissory estoppel, and brought a fraud claim against both PECC and Ramey.

For a more complete recitation of the underlying facts and history of the case, see the court's prior opinions. *See Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2010 WL 3023409 (N.D. Ill. July 29, 2010); *see also Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357 (N.D. Ill. Aug. 25, 2008).

## II. LEGAL STANDARD

The court's power to rule on evidentiary issues before trial through motions *in limine* derives from the "court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The court has broad discretion to rule on evidentiary issues raised before trial. *See Von der Ruhr v. Immtech Int'l, Inc*, 570 F.3d 858, 862 (7th Cir. 2009). However, a motion *in limine* to exclude evidence should be granted only when the evidence is inadmissible on all possible grounds. *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1055 (N.D. Ill. 2009). Indeed, evidentiary rulings should generally be deferred until trial so that issues pertaining to foundation, relevancy and potential prejudice may be examined in the proper context. *United States v. Lillie,* 669 F. Supp. 2d 903, 905-06 (N.D. Ill. 2009). The party moving for exclusion bears the burden of establishing that the evidence is not admissible for any purpose. *Id.* at 905; *Mason*, 631 F. Supp. 2d at 1056.

Because the court will deny a motion *in limine* to exclude evidence if it cannot yet determine whether the evidence at issue should be excluded, the denial of a motion *in limine* does not necessarily mean that the evidence will be admitted at trial. *Lillie,* 669 F. Supp. 2d at 905-06*.* The court has the discretion to alter previous *in limine* rulings, depending on developments during the course of the case. *Luce*, 469 U.S. at 41-42;

3

*United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) ("The court's denial of [the defendant's] motion *in limine* was a preliminary decision . . . that the evidence was admissible – a ruling subject to change based upon the court's exposure to the evidence at trial."). Therefore, parties may object to evidence during trial even if the evidence was within the scope of a previously denied motion *in limine*.

### III. ANALYSIS

**A.  Evidence Regarding "Agreements" or "Terms of Agreements" Made after December 27, 2006.**

PECC moves to exclude evidence of "agreements" or "terms of agreements" allegedly made after December 27, 2006. Specifically, PECC requests that Triad be precluded from discussing, referencing, eliciting testimony concerning, or publishing to the jury Exhibits 1 and 2 because the exhibits are irrelevant. (PECC's Omnibus Mot. *in Limine* to Exclude Evidence ("PECC's Mot. to Exclude") at 4.) Exhibit 1 is the December 30, 2006 email sent by Crawford to, among others, Ramey. It includes the Term Sheet, which was attached to the email. Exhibit 2 is the Term Sheet with Crawford's handwritten notes.

PECC argues that the documents and any evidence concerning an alleged agreement made after December 27, 2006 are irrelevant. PECC contends that the exhibits are unrelated to the alleged breach on December 27 that is at issue in the lawsuit and that such evidence does not pertain to any issue in the case. (PECC's Mot. to Exclude at 4.) In response, Triad argues that Exhibits 1 and 2 and discussions related to those exhibits were "significant factual events" pertaining to Crawford's attempts to save the Author House opportunity and set up an alternative proposal to make to Author House. (Triad's Opp'n to PECC's Mot. to Exclude ("Triad's Opp'n") at 2.) Triad states

4

that the documents and related discussions are "highly relevant to demonstrate the terms of the Triad-PECC relationship as it stood back when Mr. Ramey signed the commitment letter to AuthorHouse on December 22-23, 2006." (Triad's Opp'n at 2.) Triad further argues that evidence pertaining to what Ramey was willing to agree to on December 30, 2006 is the best evidence to demonstrate what the parties would have agreed to had the original transaction closed. (*Id.* at 2-3.) More generally, Triad contends that it would be unfair to allow PECC to elicit testimony and offer exhibits relating to post-December 27th discussions between Ramey and Crawford without allowing Triad to present this information to the jury. (*Id.* at 3.)

At the pretrial stage, it is premature to exclude Exhibits 1 and 2 and testimony and discussion related to "agreements" or "terms of agreements" that occurred after December 27, 2006, because the relevance of this evidence is unclear without examining it in the full context of trial. *See Lillie*, 669 F. Supp. 2d at 905-06 ("[E]videntiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." (quotation and citation omitted)). Relevance is defined as "evidence having any tendency to make the existence of *any fact that is of consequence to the determination of the action* more probable or less probable that it would be without the evidence." Fed. R. Evid. 401 (emphasis added). The exhibits and "agreements" at issue and related discussions may be relevant to issues in Triad's case; evidence concerning the Term Sheet arguably relates to the Triad-PECC relationship, the events surrounding Crawford's attempts to salvage the Author House deal, and what the terms of transaction may have been had it closed. Despite the fact Triad claims PECC "reneged" on promises on December 27, 2006, evidence from

December 30, 2006 may still be relevant to issues in the case. PECC's contention that Triad wrongly insists that the Term Sheet and Crawford's notes are evidence of an enforceable contract (PECC's Mot. to Exclude at 5) does not make the evidence irrelevant. At this time, PECC has not demonstrated that the exhibits or discussions related thereto are definitively irrelevant to "any fact that is of consequence." *See* Fed. R. Evid. 401. PECC's objection to this evidence is thus overruled without prejudice to being renewed at trial.

PECC additionally contends that Exhibit 2 is inadmissible because it contains Crawford's handwritten notes on the Term Sheet, and is thus hearsay. PECC argues that because it is "likely" that Exhibit 2 will be offered "for the sole purpose of proving the terms of 'the agreement,'" it is an out-of-court statement offered for the purpose of proving the truth of the matter asserted. (PECC's Mot. to Exclude at 7.) Triad counters that it is premature to exclude the exhibit based on hearsay as it does not know for what purposes it may choose to offer the document into evidence. (Triad's Opp'n at 4 n.1.) The court agrees with Triad. Because the purpose for which Triad may offer Exhibit 2 into evidence is unknown, it is unclear whether or not the handwritten notes constitute hearsay. As with its relevance objections, PECC may raise its hearsay objections again at trial.

Thus, PECC's motion to exclude evidence regarding "agreements" or "terms of agreements" made after December 27, 2006 is denied.

**B.      Information and Statements Regarding Ramey's Net Worth**

PECC moves to exclude any reference to, discussion of, or testimony concerning Ramey's net worth or financial condition. PECC takes issue with Triad's allegations that

when Crawford and Ramey first met face-to-face on December 20, 2006, Ramey told Crawford that "while he wasn't sure what he was worth, Mr. Ramey was worth at least $100 million," and that this fact continued to be discussed during the meeting. (PECC's Mot. to Exclude at 7.) PECC, which disputes that Ramey made the statements at all, argues that the statements are irrelevant to the issues in the lawsuit and highly prejudicial to both PECC and Ramey and should thus be excluded. (*Id.* at 7-8.) Triad counters that Ramey's mention of his net worth was "part of his sales pitch designed to instill within Mr. Crawford confidence in the capabilities of Mr. Ramey and his company," and notes that in addition to the breach of contract claim against PECC, Triad also brought a fraud claim against Ramey. (Triad's Opp'n. at 4.) In addition, Triad argues that Ramey's net worth pertains to its punitive damages claim against PECC and Ramey. (*Id.*)

Testimony of Ramey's net worth is relevant to Triad's reasonable reliance on PECC, which is an element of Triad's promissory estoppel and fraudulent misrepresentation claims. *See Triad Capital Mgmt.,* 2010 WL 3023409 at *8-*11. Federal Rule of Evidence 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. Although testimony pertaining to Ramey's net worth may be prejudicial, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. If Ramey discussed his net worth with Crawford, this may be probative as to whether or not Triad's reliance on Ramey and PECC was reasonable. Additionally, under Illinois law, a defendant's financial status is important and relevant in determining punitive damages. *Dubey v. Public Storage, Inc.*, 918 N.E.2d 265, 281 (Ill. App. Ct.

2009) ("The financial status of the defendant is important and relevant because the amount sufficient to punish one individual may be trivial to another.").

Thus, PECC's motion to exclude information and statements regarding Ramey's net worth is denied. If PECC so requests, the court will give a limiting instruction to the jury advising that it can consider any evidence of Ramey's net worth only when resolving the issue of reasonable reliance as it pertains to the promissory estoppel and fraudulent misrepresentations claims, and, if necessary, in determining punitive damages. *See United States v. Ross*, 510 F.3d 702, 711 (7th Cir. 2007) (stating that the district court's limiting instructions minimized the risk of prejudice).

**C.     Evidence that Ramey was a Lawyer**

Next, PECC moves to exclude any evidence that Ramey is a lawyer or evidence pertaining to Ramey's legal education. PECC specifically takes issue that during Ramey's deposition, Ramey testified that in regard to the PECC Letter, Crawford told Ramey, "You should have known what [the letter] was. You're a lawyer." (PECC's Mot. to Exclude at 8.) PECC argues that Ramey's legal background is irrelevant and prejudicial to both Ramey and PECC. (*Id.*) In response, Triad argues that the fact Ramey graduated from law school is relevant to Crawford's evaluation of Ramey's qualifications and level of sophistication. (Triad's Opp'n at 5.)

Similar to the evidence pertaining to Ramey's net worth, evidence concerning Ramey's legal education may be relevant to the issue of Triad's reasonable reliance as to the promissory estoppel and fraudulent misrepresentation claims. Information about Ramey's legal background which Triad knew of and relied on when evaluating Ramey's representations is relevant; the danger of unfair prejudice does not substantially outweigh

the probative value of the evidence. However, it does not appear as though Ramey's deposition statement cited by PECC pertains to Triad's evaluation of Ramey's representations, as this statement took place after the deal fell apart. Therefore, Ramey's deposition statement is excluded. Nevertheless, Triad is not precluded from introducing evidence concerning Ramey's legal background if such evidence is relevant to Triad's reliance on Ramey's representations.

PECC's motion to exclude evidence regarding Ramey's legal background is denied generally, but granted as to Ramey's deposition statement. If PECC so requests, the court will give a limiting instruction to the jury that it can only consider evidence of Ramey's legal background when resolving the issue of reasonable reliance as it pertains to the promissory estoppel and fraudulent misrepresentations claims.

**D.  Evidence of the size and number of attorneys of Greenberg Traurig, LLP**

Finally, although the issue has not arisen to date, PECC moves to exclude any reference to the size and number of attorneys of Greenberg Traurig, LLP. (PECC's Mot. to Exclude at 9.) Although Triad argues that it is inappropriate to identify miscellaneous issues that have not come up in a case, it agrees that counsel will not raise this issue in this case. (Triad's Opp'n at 6.)

The court notes Triad's general objection and that Triad has not raised this issue to date. However, because Triad agrees to not raise this issue, the court grants PECC's motion by agreement.

## IV. CONCLUSION

For the foregoing reasons, PECC's motion to exclude evidence is granted in part and denied in part.

ENTER:

     /s/
_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 22, 2010